J-S50018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT C. FITZSIMMONS AND AMBRA FITZSIMMONS, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| THE OFFICE OF ECONOMIC AND COMMUNITY DEVELOPMENT OF THE CITY OF BRADFORD, | : | |
| | : | |
| Appellee | : | No. 23 WDA 2014 |

Appeal from the Order Entered December 3, 2013,
In the Court of Common Pleas of McKean County,
Civil Division, at No. 1358 C.D. 2012.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and ALLEN, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 08, 2014**

Appellants Robert C. Fitzsimmons and Ambra Fitzsimmons, his wife, appeal from the order entering summary judgment in favor of The Office of Economic and Community Development of the City of Bradford ("OECD"). We affirm.

The trial court summarized the facts and procedural history as follows:

Patricia Rodgers purchased the property located at [28 Onofrio] Street, Bradford, Pennsylvania [on February 10, 2001].  To help with the purchase, she received a $22,000 loan from [OECD]. The loan was secured with a mortgage.  Robert Fitzsimmons married Patricia Rodgers in March 2004.  On December 13, 2006, Robert Fitzsimmons was added as a title owner to the property in question via a quit claim deed.  In September 2009 Robert Fitzsimmons and Patricia Rodgers were divorced.  As part of the distribution of property, Mr. Fitzsimmons was given

ownership of the property located at [28 Onofrio] Street, Bradford, Pennsylvania. On April 16, 2011, Robert Fitzsimmons and Ambra Fitzsimmons were married. On December 23, 2009, Robert Fitzsimmons executed a Mortgage Assumption Agreement with [OECD] and assumed the mortgage issued to Patricia Rodgers. On June 20, 2012, at a real estate closing, [OECD] took the net proceeds of the sale of the property at [28 Onofrio] Street Bradford, Pennsylvania ($16,319.96), over the objection of [Appellants]. [OECD] took the net proceeds to satisfy the $22,000 mortgage issued to Patricia Rodgers and assumed by [Appellants]. [According to Appellants, OECD] should have never taken the proceeds because the $22,000 loan was forgiven, per the mortgage, because Robert Fitzsimmons and Patricia Rodgers met the residency requirements.

[Appellants filed a complaint on October 22, 2012.] On November 20, 2012, [OECD] filed an Answer and New Matter denying that it inappropriately took the net proceeds of the sale and alleged the following facts: The mortgage and note entered into by Patricia Rodgers explicitly required her to pay back the $22,000.[1] Through the Mortgage Assumption Agreement Robert Fitzsimmons assumed that obligation. Robert Fitzsimmons sold the property at [28 Onofrio] Street on June 20, 2012. Prior to the sale, [Appellants] acknowledged that they owed [OECD] $22,000, but indicated they did not have sufficient funds to pay the full amount and agreed to pay [OECD] the net amount of proceeds from the sale ($16,319.96) if [OECD] would accept the same in return for satisfaction of the mortgage. [OECD] agreed.

On December 28, 2012, [Appellants] filed an Answer to [OECD's] New Matter denying that [they] owed any money to [OECD] because the loan was forgiven.

---

1 According to Sara Andrews, Executive Director of OECD, the $22,000.00 down payment assistance loan "was authorized by City Council on January 9, 2001 by Resolution #24519. This resolution specifically provides that these monies are repayable in full—without interest—upon the sale of the property." Affidavit of Sara Andrews, 10/24/13, at unnumbered 2 and attachment.

On October 24, 2013, [OECD] filed a Motion for Summary Judgment with a Brief in Support. On November 7, 2013 [Appellants] filed an Answer. On November 14, 2013, [Appellants] filed a Brief in Opposition.

Trial Court Opinion, 12/3/13, at unnumbered 1–2.

The trial court granted OECD's motion for summary judgment on December 3, 2013. This appeal followed. Appellants and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellants present the following question for review:

Did the Trial Court err in granting summary judgment against [Appellants] on claims against [OECD] based upon the Mortgage that was executed by the parties? Specifically, did the Trial Court err by finding as a matter of law that [Appellants'] obligation to repay the $22,000 loan was not forgiven pursuant to the terms of the Mortgage and that [Appellants] were obligated to repay such loan?

Appellants' Brief at 2.

Initially, we observe our scope and standard of review:

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action.... Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient

evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden.

*DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 585–586 (Pa. Super. 2013) (citations and quotation marks omitted). The question of whether there exist any genuine issues of material fact is subject to a *de novo* standard of review. *Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 830–831 (Pa. Super. 2005).

Pennsylvania Rule of Civil Procedure 1035.2 provides for summary judgment, in pertinent part, as follows:

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense

which could be established by additional discovery or expert report[.]

\* \* \*

*Note*: Rule 1035.2 sets forth the general principle that a motion for summary judgment is based on an evidentiary record which entitles the moving party to judgment as a matter of law.

The evidentiary record may be one of two types. Under subparagraph (1), the record shows that the material facts are undisputed and, therefore, there is no issue to be submitted to a [fact-finder].

An example of a motion under subparagraph (1) is a motion supported by a record containing an admission. By virtue of the admission, no issue of fact could be established by further discovery or expert report.

\* \* \*

Oral testimony alone, either through testimonial affidavits or depositions, of the moving party or the moving party's witnesses, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact.

Pa.R.C.P. 1035.2 (internal citations omitted).

When faced with questions of contractual interpretation, our standard and scope of review are well settled:

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

> *Ruby v. Abington Memorial Hospital*, 50 A.3d 128, 132 (Pa.Super.2012) (internal quotations omitted). Moreover, we have stated:
>
>> Determining the intention of the parties is a paramount consideration in the interpretation of any contract. The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. However, as this Court stated in *Herr Estate*, 400 Pa. 90, 161 A.2d 32 (1960), "where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances."
>>
>> We first analyze the contract to determine whether an ambiguity exists requiring the use of extrinsic evidence. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The court, as a matter of law, determines the existence of an ambiguity and interprets the contract whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact.
>
> *Missett v. Hub International Pennsylvania, LLC*, 6 A.3d 530, 541 (Pa.Super.2010). "Where the language of the contract is ambiguous, the provision is to be construed against the drafter." *State Farm Fire and Casualty Company v. PECO*, 54 A.3d 921, 928 (Pa.Super.2012).

*Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.*, 77 A.3d 1, 6–7 (Pa. Super. 2013).

Appellants argue that, "[p]ursuant to the specific terms of the Mortgage, the $22,000 loan was forgiven as a result of the satisfaction of the condition that Patricia F. Rodgers and Robert C. Fitzsimmons occupy the

Residence as their principal residence for a period in excess of five years."

Appellants' Brief at 6. In response, OECD contends that:

> Robert C. Fitzsimmons assumed the debt of Patricia Rodgers under the Note and Mortgage. The Note and Mortgage unambiguously required Rodgers to repay the $22,000.00 down payment assistance loan to the OECD upon the sale of the Property. . . Robert C. Fitzsimmons expressly acknowledged the obligation to repay the down payment assistance loan when he executed the Mortgage Assumption Agreement.

OECD's Brief at 14. OECD explains that the five-year residency period relied upon by Appellants "related to funds disbursed for the actual rehabilitation of the Property under the HOME program[, a program to improve the quality of housing stock in a community]. This language was designed to prevent a purchaser from receiving the enhanced value and benefit of a publicly-funded home renovation and then flipping the home shortly after purchasing it." OECD's Brief at 9–10; *see also* Affidavit of Sara Andrews, 10/24/13, at unnumbered 3 (explaining that the residency provisions were related to the HOME rehabilitation monies and not the $22,000.00 down payment assistance monies).

The trial court reviewed the following document provisions as relevant:

1. Mortgage between Patricia Rodgers and [OECD] securing $22,000 loan, recorded February 20, 2001:

   a. "This debt provides for the full repayment of the loan to OECD upon the sale of the real estate, without interest."

b. "Borrower and Lender Covenant and agree as follows: 1. Payment of this debt in full without interest upon the sale of the property."

c. "Occupancy, preservation, maintenance and protection of Property; Borrowers Loan Application; leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for the entire five (5) year forgiveness period. Should Borrower establish and occupy as Borrower's principal residence at another location, Borrower will be required to repay the sum provided by lender. . ."

2. Note for $22,000 dated February 20, 2001:

a. "FOR VALUE RECEIVED, Patricia F. Rodgers, borrower, whose address is 28 Onofrio Street, Bradford, Pennsylvania 16701, hereby promises to pay the order of Office of Economic and Community Development of the City of Bradford, Payee, whose address is 20 Russell Boulevard, Bradford, Pennsylvania 16701, the principal sum of $22,000. Payment of this debt may be made in full without interest upon the sale of the property."

3. Mortgage Assumption Agreement between OECD and Robert Fitzsimmons dated December 23, 2009:

a. "WHEREAS, Lender is holder and owner of the following documents (hereinafter sometimes collectively referred to as the 'Loan Documents'): 1. Mortgage Note dated February 20, 2001, in the original principal amount of $22,000 executed and delivered by PATRICIA F. RODGERS (hereinafter referred to as the 'Original Borrower') in favor of Lender (hereinafter referred to as the 'Note'); and, 2. Mortgage given by Original Borrower as 'Mortgagor' to Lender as 'Mortgagee' dated February 20, 2001 . . . and which Mortgage encumbers the real property described herein."

b. WHEREAS, the Borrower [Robert Fitzsimmons] desires to receive said Property and formally assume all of the covenants and conditions contained in the Mortgage and all other Loan Documents. . ."

c. NOW THEREFORE, for and in consideration of the sum of One Dollar ($1.00) in hand paid, receipt of which is hereby acknowledged and in consideration of the Premises and of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, the parties hereto agree as follows:

    i. Assumption. Borrower [Robert Fitzsimmons] expressly assumes the Loan Documents and agrees to perform all covenants, conditions, duties and obligations contained therein and agrees to pay the Note and the obligations evidenced thereby in a prompt and timely manner in accordance with the terms thereof."

Trial Court Opinion, 12/3/13, at unnumbered 2–4 (emphasis omitted; brackets in original).

Applying the laws of summary judgment and contract interpretation to the mortgage and note provisions, the trial court opined as follows:

[OECD's] Motion for Summary Judgment is granted because the contracts at issue in this case required [Appellants] to repay the $22,000 loan. Both parties agree that [Appellants] assumed the Mortgage and Note that belonged to Patricia Rodgers. The dispute is based on how to interpret the Mortgage. [OECD] argues that the Mortgage should be interpreted to require [Appellants] to re-pay the $22,000 loan. [Appellants] argue that the Mortgage should be interpreted to grant [them] loan forgiveness due to meeting the residency requirement. The Court must use the cannons [sic] of interpretation to determine

if these clauses can be reconciled or if one must trump the other. The Mortgage has at least two clauses that explicitly state that Ms. Rodgers had to repay the loan and one clause which suggests that the loan could be forgiven if she lived in the residence for five years. The clauses cannot cancel each other out and cannot be reconciled. Thus, under [*Hoover to Use of Chambersburg Trust Co. v. Alexander*, 163 A. 389, 390 (Pa. Super. Ct. 1932)], the earlier clauses requiring re-payment must trump the latter clause that suggests loan forgiveness.

Further, the differing clauses create an ambiguity in the mortgage. Based on that ambiguity the Court must ascertain the intent of the parties. The best evidence for ascertaining the parties' intent is the mortgage itself and the contracts and documents surrounding the mortgage. The Court has all of these documents properly before it, so it will use them to decipher the intent of Patricia Rodgers when she entered into the Mortgage and Note and the intent of Robert Fitzsimmons when he entered into the Mortgage Assumption Agreement.

First, Patricia Rodgers intended to pay the loan back to [OECD]. The Mortgage contains two clauses that require Ms. Rodgers to re-pay the loan when she sells the house. Neither clause mentions loan forgiveness, but requires the loan to be re-paid once the house is sold. Along with the Mortgage, Ms. Rodgers signed a Note for $22,000 that explicitly stated that she was responsible for paying back the loan when she sold the house. The Note also makes no mention of loan forgiveness, but instead makes the sale of the house the trigger for paying back the loan. Ms. Rodgers intended to pay back the loan.

Second, Robert Fitzsimmons intended to pay back the loan. The Mortgage Assumption agreement contains multiple clauses that require Mr. Fitzsimmons to pay back the loan. He assumed the mortgage, the note, and all obligations arising therefrom. The Agreement makes no mention of loan forgiveness. Also, Mr. Fitzsimmons signed this Agreement long after he would have met any alleged residency requirement for loan forgiveness. If he thought the loan was forgiven, then he would not have assumed the Note and Mortgage because the loan obligations arising therefrom would have already been

fulfilled. He knew, or should have known through the representations of his counsel, what he was assuming.

. . . Based on a basic interpretation of the Mortgage and after ascertaining the Parties' intent, no reasonable minds could disagree that [Appellants] were required to re-pay the $22,000 loan.

Trial Court Opinion, 12/3/13, at unnumbered pages 7–8.

Applying our standard of review to the record at hand, we discern no abuse of discretion or error of law in the trial court's analysis and determination. The agreement of sale between Patricia Rodgers and the City of Bradford for 28 Onofrio Street indicates that she received "Downpayment assistance of $22,000 to be financed as a second mortgage – no monthly payment required. Must be paid in full upon sale of property or change of ownership." Agreement of Sale, 1/16/01, at ¶ 6(E). The mortgage and note expressly require repayment of the $22,000 down-payment-assistance loan to OECD upon sale of the property. Mortgage, 2/20/01, at 1; Note, 2/20/01, at 1. Mr. Fitzsimmons assumed that obligation when he executed the mortgage assumption agreement, which was recorded in McKean County Record Book 647, Page 344. Mortgage Assumption Agreement, 12/23/09. Indeed, Appellants averred in their complaint that Mr. Fitzsimmons "executed a Mortgage Assumption Agreement with [OECD] to assume the mortgage previously issued from Patricia F. Rodgers mortgage dated February 20, 2001." Complaint, 10/22/12, at ¶ 16; Exhibit H.

Additionally, the mortgage disallowed transfer of the property without OECD's prior written consent, and, pursuant to the mortgage assumption agreement, OECD was "unwilling to give its consent to the transfer of the Property to [Mr. Fitzsimmons] unless [he] shall assume all of the obligations heretofore imposed by the Loan Documents upon [Patricia Rodgers]." Mortgage, 2/20/01, at ¶ 15; Mortgage Assumption Agreement at 1. The record also contains a memo drafted by Sara Andrews on July, 13, 2012, explaining the context of the five-year forgiveness language which was erroneously included in the mortgage. Sara Andrews also indicated that Mr. Fitzsimmons "was well aware of the [repayment] requirements prior to the transfer of the property from Ms. Rodgers as [Sara Andrews] had a conversation with him on the matter and [she] also required him to provide income information to meet the affordability requirements." Complaint, 10/22/12, at Exhibit I.

Lastly, Mr. Fitzsimmons acknowledged the following facts under oath: the agreement of sale, the mortgage, and the note contained repayment provisions related to the $22,000.00 down payment assistance loan; he was not aware of any documents that provided otherwise; OECD had to give consent in writing to any transfer of the property; to receive such consent, he was required to assume Patricia Rodgers' obligations to OECD; before the closing on June 20, 2012, he signed a settlement agreement, which

"provided that part of where the money was going at closing was to pay off the second loan to OECD." Mr. Fitzsimmons Deposition, 6/13/13, at 24–39.

Based on this evidentiary record and deferring to the trial court's credibility determinations, we agree with the trial court that no reasonable mind could disagree that Appellants were required to re-pay the $22,000 loan to OECD.[2] Thus, we conclude that OECD was entitled to judgment as a matter of law, and we affirm the order granting OECD's motion for summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2014

---

[2] We also agree with the trial court that this case was properly decided on the basis of contract interpretation. Therefore, "it is unnecessary to address the equitable arguments [of collateral estoppel and accord and satisfaction] set forth by [OECD]." Trial Court Opinion, 12/9/13, at 8.